```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


ELEANOR SANTANIELLO, by          :
and through her Sister and       :
Conservator LINDA QUADRINI,      :
                                 :
     Plaintiff,                  :
                                 :
     v.                          :     CASE NO.  3:04CV806(RNC)
                                 :
SYBIL SWEET, ET AL.,             :
                                 :
     Defendants.                 :
```

                      RULING ON DISCOVERY MOTIONS

Pending before the court are plaintiff's "Motion in Limine for Orders Relating to Discovery" (doc. #154), the DMR Defendants' Motion to Compel (doc. #169), the DMR Defendants' Motion for Enlargement of Time to Disclose Expert Reports (doc. #158) and the plaintiff's Motion to Preclude the DMR Defendants' Experts (doc. #165).  The motions all relate to a discovery dispute between the plaintiff and two of the defendants, Peter O'Meara, the Commissioner of the State of Connecticut Department of Mental Retardation, and Sybil Sweet (the "DMR Defendants") regarding certain investigation that the DMR Defendants' experts wish to conduct.

**A.   Factual and Procedural Background**

According to the complaint, the plaintiff, Eleanor Santaniello, is a resident in a Westport, Connecticut group home owned and operated by defendant CLASP Homes, Inc.  The plaintiff has significant and permanent disabilities, including mental

retardation, and is nonverbal.  This action is brought on her behalf by her sister and legal conservator, Linda Quadrini.  The plaintiff alleges that the defendants disregarded her health and dental needs, resulting in the extraction of seventeen of her teeth.

The DMR Defendants were initially represented by Philip J. O'Connor, who also represented the defendants CLASP Homes and Kathy M. Stuart.  In December 2005, because of a newly-perceived potential conflict of interest, Attorney Thomas York entered a substitute appearance on behalf of the DMR Defendants.  On March 27, 2006, the court granted the plaintiff's motion to amend her complaint (doc. #117).  The amendments added prayers for relief which the DMR Defendants interpret as requests for system-wide reforms by the DMR.

In light of those developments, on June 9, 2006, the court entered an order (doc. # 147) extending the deadlines for completion of discovery.  The court permitted the DMR defendants to depose plaintiff's experts Sue Gant and Cornelia Gallo and to retain between one and three experts to address matters raised by Dr. Gant.  New deadlines were entered for the completion of expert discovery.

The DMR Defendants retained three expert witnesses, Kevin Walsh, Craig Blum and Paul Pastras.  In July, 2006, these experts traveled to Connecticut to conduct certain interviews, tours and

observations. The plaintiff objected to these information-gathering efforts. Plaintiff's attorney told counsel for the other defendants that he would object if they cooperated with the DMR Defendants' experts. As a result, the experts were able to collect only limited information before the deadline for disclosure of their reports.

The plaintiff seeks a protective order prohibiting the experts from gathering this information (doc. #154). In response, the DMR Defendants move to compel the plaintiff to cooperate with their efforts (doc. #169). The DMR Defendants also request an extension of time to complete the discovery and produce their experts' final reports (doc. #158).

**B.   The Discovery Dispute**

The dispute centers around whether the DMR Defendants' experts may:

> 1. Observe the plaintiff at the group home where she resides;
>
> 2. Interview the plaintiff's conservator; and
>
> 3. Interview employees of the DMR, CLASP and Norwalk Hospital.

The court will address each of these requests in turn.

**1. Observation of Plaintiff**

First, the experts wish to observe the plaintiff. They do not intend to examine her physically or interact with her, but merely wish to watch her. The defendants contend that

plaintiff's expert was permitted to observe the plaintiff before reaching her opinions, so their experts should have a similar opportunity. They argue that it is important for their experts to see the plaintiff's living conditions and her quality of life.

The DMR Defendants concede that plaintiff's counsel may be present during this observation, but plaintiff objects nonetheless. The primary bases for the objection are (1) that the time for fact discovery has passed and (2) that no further examination should be permitted because an IME was conducted by an expert retained by the DMR Defendants' prior counsel during the time that he represented the DMR Defendants. The DMR Defendants note that the previous IME focused on psychological issues, not on the systemic statewide claims they believe are now at issue. They argue that the IME did not rebut the opinions of the plaintiff's expert, Dr. Gant.

As to the objection that discovery has closed, the court's order of June 9, 2006 envisioned that some limited, additional discovery might be required by the DMR Defendants in preparing their expert witnesses. As to plaintiffs' second objection, the court is persuaded that the DMR Defendants' experts should have an opportunity to observe the plaintiff because plaintiff's expert had such an opportunity. The DMR Defendants represented at oral argument, and the court hereby orders, that the observation shall not last for more than thirty minutes.

Plaintiff's counsel shall be present during the observation, and plaintiff's conservator may be present if she wishes.  The experts may be accompanied by no more than one defense attorney.  The defense team may introduce themselves to the plaintiff if her attorney believes that is appropriate and otherwise will not speak to her or approach her unless her attorney permits it.  Counsel are encouraged to work out details of the observation so as to minimize the intrusiveness of the observation.

### 2. Interview with Plaintiff's Conservator

Next, the experts wish to interview the plaintiff's conservator, her sister and co-plaintiff Linda Quadrini.  The DMR Defendants' motions indicate that they would prefer an informal interview, with her counsel present, but they appear to concede that they must resort to a formal deposition if she objects to an interview.  The plaintiff objects on the grounds that Ms. Quadrini has previously been deposed and the deadline for fact depositions has passed.

The DMR Defendants note that the previous deposition took place before the complaint was amended and therefore did not address the system-wide claims in the Second Amended Complaint.  They argue that they do not intend to review anything that was covered during the previous deposition but rather will focus on how the plaintiff and the conservator interact with the DMR system.  The court will permit the DMR Defendants to reopen the

deposition of Ms. Quadrini for these limited purposes. The deposition shall be limited to two hours, and only questions arising out of the plaintiff's March 2006 amendments to her complaint are permitted.

### 3. Interviews with Co-Defendants

Finally, the experts seek to conduct *ex parte* interviews with employees of the DMR, CLASP and Norwalk Hospital. Some of the employees are named individual defendants, but most are simply employees of the named institutional defendants. The DMR Defendants argue that they are entitled to conduct *ex parte* interviews of willing co-defendants and non-party witnesses. The plaintiff contends that the interviews may not take place because they would involve unauthorized disclosures of medical information protected by HIPAA, but that if they do go forward, her counsel should be permitted to attend them as well.

The court disagrees that HIPAA bars the interviews. HIPAA expressly permits the disclosure of medical records during a judicial proceeding under the following circumstances:

> (I) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
> > * * *
> >
> > (B) The covered entity receives satisfactory

>       assurance, as described in paragraph (e)(1)(iv) of
>       this section, from the party seeking the
>       information that reasonable efforts have been made
>       by such party to secure a qualified protective
>       order that meets the requirements of paragraph
>       (e)(1)(v) of this section.[1]

45 CFR 164.512(e)(1). Thus, if a qualified protective order has been entered, then medical records may be disclosed in response to a formal discovery request. HIPAA does not expressly address the disclosure of medical information during an *ex parte* interview such as the ones proposed here. However, several courts considering this issue have held that HIPAA permits the disclosure of medical records during an *ex parte* interview, so long as there is a HIPAA-compliant protective order in place. See, e.g. Bayne v. Provost, 359 F. Supp. 2d 234, 242-43 (N.D.N.Y. 2005); Hulse v. Suburban Mobile home Supply Co., No. 06-1168-WEB, 2006 U.S. Dist. LEXIS 74468 (D. Kan. Oct. 12, 2006); Shropshire v. Taylor, No. 06-10682, 2006 U.S. Dist. LEXIS 52943 (E.D. Mich. Aug. 1, 2006); Croskey v. BMW of N. America, No. 02-73747, 2005 U.S. Dist. LEXIS 43442 (E.D. Mich. Nov. 14, 2005).

Here, the parties disagree about the scope of their

---

[1] Paragraph (e)(1)(v) defines a "qualified protective order" as one that "(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding."45 CFR 164.512(e)(1)(v).

7

protective order, (see doc. #135), with plaintiff arguing that it only applies to documents and does not adequately protect medical information obtained in oral interviews.  However, plaintiff conceded in oral argument that this shortcoming in the protective order could be easily resolved. If the interviews take place, the parties may amend the protective order so that medical information obtained during oral interviews is expressly protected.

The plaintiff argues that her counsel should be permitted to be present for any interviews.  The defendants respond that plaintiff's counsel should not be permitted to attend but that the plaintiff may subsequently depose the experts regarding the interviews they conduct.  The parties are encouraged to meet and confer to work out this remaining issue in a way that will minimize discovery costs, shorten the time required for the remaining discovery and promote effective communication about the parties' positions, their experts' opinions and the evidence that is likely to be relied on at trial.

As to the *ex parte* interviews, the DMR defendants' motion to compel is denied without prejudice to refiling if the parties are unable to resolve their dispute. If the parties are unable to reach an agreement as to these interviews, they shall contact the chambers of the undersigned to report on the status of their discussions.

**C.   Extension of Time**

The DMR Defendants have moved for an extension of time for their experts to complete their investigation and revise their reports. The court grants this motion and amends the scheduling order as follows:

The DMR Defendants may supplement their expert witnesses' reports on or before **April 1, 2007**. The plaintiff shall complete the depositions of the DMR Defendants' experts by **May 1, 2007**. Plaintiff may disclose her rebuttal experts by **June 1, 2007**, and they shall be deposed by **July 1, 2007**.

All of the defendants have submitted requests for a prefiling conference, which were referred to the undersigned (doc. #185). The court will dispense with a prefiling conference, and the defendants' motions for summary judgment shall be due on or before **August 15, 2007**.

The Joint Trial Memorandum will be due 30 days after a ruling on the parties' summary judgment motions.

The next joint status report of counsel will be filed on or before **April 15, 2007**. The report will address the matters listed in Fed. R. Civ. P. 16(c). Joint status reports of counsel addressing those matters will be submitted every 90 days thereafter until the matter is resolved.

**D.   Motion to Preclude Experts**

Finally, the plaintiff has moved to preclude the DMR

9

Defendants' experts (doc. #165). Plaintiff argues, first, that the experts' reports were incomplete due to the additional investigation that they sought to conduct. Because the court has ruled that the DMR Defendants' experts are entitled to additional investigation, this is not a basis for precluding the experts.

In addition, plaintiff contends that the experts should be barred because they admitted at their depositions that they had not complied fully with the protective order. The court is troubled by Attorney York's arguments that he was too rushed by the deadline to observe all of the requirements of the protective order and did not believe that notarizing was necessary. The court has entered a protective order that requires the authorization forms and requires them to be notarized, and the court expects compliance with that order in all respects.

Nonetheless, the court does not find that the alleged violations justify the drastic measure of precluding the experts. Defense counsel has represented that he read the protective order to the experts before they began their work on this matter, and there is no claim that they have disclosed confidential information to anyone outside of the defense team. The experts are permitted to discuss medical records among themselves.

Finally, the plaintiff argues that the experts impermissibly disclosed a single joint report rather than each disclosing their own report and that their opinions are cumulative. On the

10

present record, the court does not find that the report violates Fed. R. Civ. P. 26(a)(2). The plaintiff's motion to preclude (doc. #165) is denied.

**E.   Conclusion**

For all the foregoing reasons, the plaintiff's "Motion in Limine for Orders Relating to Discovery" (doc. #154) and Motion to Preclude the DMR Defendants' Experts (doc. #165) are denied, and the DMR Defendants' Motion to Compel (doc. #169) and Motion for Enlargement of Time to Disclose Expert Reports (doc. #158) are granted as set forth herein.

As discussed above, the court's decision regarding the expert witnesses' interviews with the co-defendants and their employees is without prejudice to refiling if the parties are unable to resolve their dispute.

In addition, to resolve any lingering doubts about his experts' compliance with the protective order, Attorney York shall provide plaintiff's counsel with fully completed and notarized authorization forms from each of the experts within ten days of the date of this ruling.

SO ORDERED at Hartford, Connecticut this 25th day of January, 2007.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge